Michael R. Rochelle
State Bar No.17126700
Chris B. Harper
State Bar No. 09025500
Eric M. Van Horn
State Bar No. 24051465
ROCHELLE MCCULLOUGH LLP
325 N. St. Paul, Suite 4500
Dallas, Texas 75201
P: (214) 953-0182
F: (214) 953-0185

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS-IN-POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## PLANO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Chapter 11 |
| NORTH AMERICAN TECHNOLOGIES | § | |
| GROUP, INC., | § | Case No. 10-20071-BTR |
| | § | |
| Debtor. | § | |
| | § | |
| IN RE: | § | |
| | § | Chapter 11 |
| TIETEK TECHNOLOGIES, INC., | § | |
| | § | Case No. 10-20073-BTR |
| Debtor. | § | |
| | § | |
| IN RE: | § | |
| | § | Chapter 11 |
| TIETEK LLC, | § | |
| | § | Case No. 10-20072-BTR |
| Debtor | § | |
| | § | Joint Administration Requested |

**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL PURSUANT TO 11
U.S.C. § 363; (II) GRANTING ADEQUATE PROTECTION TO
OPUS 5949 LLC PURSUANT TO 11 U.S.C. §§ 361AND 363; AND (III) SCHEDULING
<u>FINAL HEARING PURSUANT TO BANRKUPTCY RULE 4001(b)</u>**

**A HEARING WILL BE CONDUCTED ON THIS MOTION ON TUESDAY, MARCH 23, 2010 AT 9:15 A.M. IN THE COURTROOM OF THE HONORABLE BRENDA T.**

1

RHOADES, 660 NORTH CENTRAL EXPRESSWAY, SUITE 300B, PLANO, TEXAS 75074.

**TO THE HONORABLE BRENDA T. RHOADES, U.S. BANKRUPTCY JUDGE:**

North American Technologies Group, Inc. ("NATK"), TieTek Technologies, Inc. ("TTT"), and TieTek LLC ("TieTek") (collectively, the "Debtors"), as debtors-in-possession in the above-captioned cases (collectively, the "Chapter 11 Cases"), move the Court (the "Motion"), pursuant to Sections 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* (the "Bankruptcy Code"), for entry of an interim order in the form attached hereto as Exhibit A (the "Proposed Interim Cash Collateral Order"): (a) authorizing the Debtors to use Cash Collateral (as that term is defined by Section 363(a) of the Bankruptcy Code); (b) granting adequate protection to Opus 5949 LLC, the Debtors' prepetition secured lender; and (c) scheduling a final hearing on the Debtors' use of Cash Collateral pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and would show the Court as follows:

## I.
## JURISDICTION AND VENUE

1.  This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2), and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## SUMMARY OF RELIEF REQUESTED

2.  The Debtors request authority to use Cash Collateral pursuant to Section 363 of the Bankruptcy Code and to grant Opus 5949 LLC adequate protection pursuant to Sections 361 and 363 of the Bankruptcy Code.

3. The Debtors are informed that Opus consents to the Debtors' use of Cash Collateral as provided in this Motion.

4. Pursuant to Rule 4001(b)(1)(B) of the Bankruptcy Rules, the Debtors provide the following summary of the key aspects of the relief sought:

(a) <u>Name/Address of Each Entity with an Interest in Cash Collateral:</u> Opus 5949, LLC ("Opus"), a Texas limited liability company, 5949 Sherry Lane, Suite 1900, Dallas, Texas 75225, and its manager Sammons VPC, Inc.,[1] a Delaware corporation, under, *inter alia,* (i) that certain Amended and Restated Promissory Note dated July 7, 2005, in the amount of $14,000,000.00 (the "2005 Note"); and (ii) that certain Amended and Restated Promissory Note dated August 20, 2009, in the amount of $340,000.00 (the "2009 Note"). The 2005 Note and the 2009 Note are secured by substantially all of the Debtors' assets pursuant to, *inter alia*, (1) that certain Security Agreement dated February 5, 2004; (2) that certain Security Agreement (Membership Interest) dated February 5, 2004; (3) that certain Grant of Security Interest in U.S. Patent (Patent No. 5,886,078) dated February 5, 2004; (4) that certain Grant of Security Interest in U.S. Patent (Patent Application No. 20020123553, now Patent No. 6,828,372) dated February 5, 2004; (5) that certain Grant of Security Interest in U.S. Trademark Registrations and Applications dated February 5, 2004; (6) that certain Grant of Security Interest in U.S. Patents and Registered Trademark dated on or about July 2007; (7) that certain Second Lien Security Agreement dated August 20, 2009; (8) that certain Second Lien Intellectual Property Security Agreement dated on or about August 20, 2009; and (9) that certain Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing dated September 3, 2009 and recorded in the official records of Harrison County, Texas. The 2005 Note, the 2009 Note, and all other loan documents and security agreements referenced above are collectively, the "Opus Loan Agreement."

(b) <u>Name & Address of Entities in Control/Possession of Cash Collateral:</u> TieTek, LLC and/or North American Technologies Company, Inc., 429 S. Memory Lane, Marshall, Texas 75670.

(c) <u>Purposes for the Use of Cash Collateral:</u> The Debtors propose to use Cash Collateral, in the amount of approximately $452,000.00 for the next 13 weeks under the Cash Collateral Budget (defined below and attached as Exhibit B), during these Chapter 11 Cases:

(i) to preserve the value of the estates' assets that serve as collateral for amounts owing to Opus (all such collateral, including Cash Collateral, and the

---

[1] Opus 5949 LLC and Sammons VPC, Inc. are two of several related entities including, Herakles Investments Inc., that have made substantial loans to the Debtors on an unsecured and secured basis. These entities are ultimately controlled and/or owned by Sammons Enterprises, Inc.

income, proceeds, products, rents or profits thereof referred to herein as the "Collateral");

(ii) to preserve the value of the estates' assets in which Opus does not hold validly-existing security interests or liens, or in relation to which Opus' security interests or liens are avoided (the "Unencumbered Assets");

(iii) to administer the cases, including without limitation, overhead (such as labor and benefits, rent, utilities, and other ordinary and necessary operating expenses), fees and expenses incurred by professionals employed by the Debtors (subject to court approval), and all statutory fees due the U.S. Trustee or the Court (collectively, "Case Administration Expenses"); and

(iv) to assist in the marketing and sale of one or more of the Debtors' assets.

(d) <u>Material Terms:</u>
(i) The Debtors' proposed initial 3-month budget (the "Cash Collateral Budget") is attached as Exhibit B and incorporated by reference for all purposes. Subject to allowable variances during the 3-month period (the "Forecast Period") of twenty percent (20%) for any line item, and ten percent (10%) on an overall cumulative basis, the Debtors propose to restrict use of Cash Collateral to the items set forth in the Budget.

(ii) The Debtors further propose that their authority to use Cash Collateral terminate upon the earliest of the following to occur (each a "Termination Event"):

(A) the end of the Forecast Period (unless extended by separate order in connection with the submission of a supplemental budget for the extension period);

(B) the Court's entry of an order finding a violation of, or a default event, under the Court's order authorizing use of Cash Collateral;

(C) the Debtor's actual disbursements exceeding 20% of the disbursements authorized for any line item under the Budget or 110% on an overall cumulative basis;

(D) the Court's entry of an order authorizing and providing post-petition debtor-in-possession financing for the Debtors;

(E) the Debtor's failure to cure a breach by the Debtors of any other obligation under the Interim Cash Collateral Order within five business days following the delivery of written notice of a breach by the Debtors to counsel for Opus

(F) the Court's entry of an order appointing a Chapter 11 trustee;

(G) the Court's entry of an order converting the Bankruptcy Case to a proceeding under Chapter 7 of the Bankruptcy Code; or

(H) the Court's entry of an order dismissing the Chapter 11 Cases.

(iii) The Debtors will have 90 days from the Petition Date (the "Challenge Deadline") to challenge the validity, perfection, or priority of the security interests and liens of Opus. Failure to timely challenge will constitute Debtors agreement that Opus' liens against and security interests in the collateral are legal and valid.

(iv) The Debtors will be prohibited from using Cash Collateral to object, contest, or challenge the validity, extent, perfection, priority, or enforceability of the Opus Loan Agreement or any liens or security interests with respect thereto; to prevent, hinder, or delay Opus' enforcement of remedies and collections rights against Opus' collateral, except for motions to lift the stay; or to modify opus' rights under the Opus Loan Agreement.

(e) <u>Adequate Protection:</u> The Debtors will provide to Opus adequate protection in the form of:

(i) valid and automatically perfected first-priority replacement security interests and liens, superior to any and all creditors and/or interest holders of the Debtors' estates, in and upon all the property and assets of the Debtors' estates which are of the same categories and types of property and assets that comprised Opus' prepetition collateral, whether acquired before or after the Petition Date (defined, *infra*), whether now owned and existing or hereafter acquired, created, or arising, and all products and proceeds thereof (including, without limitation claims of the Debtors against third parties for loss or damages to such property), including all accessions thereto, substitutions and replacements wherever located (the "Replacement Liens"); provided, however, such Replacement Liens shall be subject to any interest of third-parties for property held in trust by the Debtors pursuant to applicable law or contractual agreement;

(ii) to the extent such Replacement Liens are insufficient to adequately protect any diminution in value of Opus' interest in the pre-petition collateral and Cash Collateral, a super-priority administrative expense claim to the extent of such diminution, and all other benefits and protections allowable under Bankruptcy Code § 507(b), which claim shall have priority over all costs and expense of administration of any kind, including those specified or ordered pursuant to Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1114, or any other provision of the Bankruptcy Code or otherwise (whether incurred in these Chapter 11 Cases or in any subsequent Chapter 7 case),

and shall at all times be senior to the rights of the Debtors, any successor trustee or estate representative in these Chapter 11 Cases, or any successor case(s);

(iii) weekly reports, during the Forecast Period until a Termination Event, executed by the Debtors' General, Counsel, Joe B. Dorman, which reconcile actual Cash Collateral usage during the foregoing week in comparison to the Cash Collateral Budget and certify compliance with the Budget (subject to allowable variances); and

(iv) adequate insurance coverage and timely payment of all postpetition taxes assessed and costs due in relation to the Collateral in the ordinary course of the Debtors' businesses, thereby keeping the properties free of liens.

## III.
## FACTUAL BACKGROUND[2]

**A.     The Debtors' Chapter 11 Filings and Businesses Generally.**

5.     On March 18, 2010 (the "Petition Date") the Debtors commenced their cases under Chapter 11 of the Bankruptcy Code. The Debtors ceased manufacturing operations in August 2009, but continue to manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. By virtue of the provisions of the Bankruptcy Code, as debtors-in-possession, the Debtors have the statutory responsibilities and duties of a trustee, except where specifically excused. *See* H.R. § 200, H.R. Rep. No. 595, 95th Cong., 1st Sess. 404 (1977). As such, the Debtors are serving in the capacity of a Chapter 11 trustee as if appointed by order of this Court.

6.     TieTek, a Delaware limited liability company, is a wholly owned subsidiary of TTT, a Texas corporation, which is a wholly owned subsidiary of NATK, a Delaware corporation and former public company. The Debtors' principal place of operations is in Marshall, Texas. TieTek, *inter alia*, is the primary operating company of the three Debtors and

---

[2]     The Declaration of Joe B. Dorman in Support of Debtors' Voluntary Petitions Under Chapter 11 of Title 11 of the United States Code and First Day Motions (the "Dorman Declaration") contains a more extensive statement of background facts (including a detailed account of the various financial difficulties that led to the filing of this Chapter 11 case), and provides support for the factual matters discussed herein.

designs, manufactures, and markets composite railroad ties. NATK, *inter alia*, raised capital from the public and private equity markets and loaned the capital to TieTek. NATK also disbursed, and continues to disburse, funds to fulfill TieTek's payroll obligations and other operating expenses, and occasionally receives funds from TieTek for disbursement and/or in partial repayment of amounts owed by TieTek to NATK.

**B.     Events Leading to Chapter 11**

7.     TieTek is the market leader in composite railroad tie design and manufacturing. TieTek ties use recycled plastic materials and vehicle tires to manufacture durable and sustainable railroad ties that outperform traditional wooden railroad ties. Production of 3,300 TieTek ties (approximately one mile of railroad track) reuses approximately 2 million plastic bottles, 9 million plastic bags, and 10,000 scrap vehicle tires. TieTek's ties are used in class I railroad installations (mainly for freight transport), transit rail installations (for transport of commuters), and railroad bridge installations. TieTek's ties may last up to 40 years, compared to the approximate five to seven year lifespan of traditional wooden ties, but TieTek's ties cost about twice as much as wooden ties. Thus, while TieTek's ties may significantly reduce long-term track maintenance costs, they are more expensive to purchase than traditional wooden ties. TieTek's customers include some of the largest railroad companies in the United States. TieTek currently has approximately 13 employees, and at its peak had over 130 employees. The production facility in Marshall, Texas has been in operation since 2004. As more fully described in the Dorman Declaration, the factors leading to these Chapter 11 Cases include regular business and manufacturing start-up issues, increased raw materials costs, a soft railroad tie market, turnover in the executive and management ranks, significant litigation, and reduced

funding from the Debtors' lenders. As a result, the Debtors were forced to cease their manufacturing operations in August 2009.

## IV.
## BASIS FOR RELIEF REQUESTED

8. The statutory bases for the relief requested are Sections 361 and 363 of the Bankruptcy Code, and such relief is warranted pursuant to Rule 4001(b) of the bankruptcy Rules.

9. Section 363 defines "cash collateral" as

> "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents or profits of property . . . subject to a security interest as provided in section 552(b) of [the Bankruptcy Code], whether existing before or after the commencement of a case under [the Bankruptcy Code]."

11 U.S.C. § 363(a). Under Section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral only if either "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use … in accordance with the provisions of this section." *Id.* § 363(c)(2).

10. Separately, Section 363(e) of the Bankruptcy Code provides that, on request of any entity that has an interest in property proposed to be used by a debtor in possession, the court, with or without hearing, "shall prohibit *or condition* such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e) (emphasis added).

11. As debtors-in-possession, the Debtors need immediate access to the cash in their operating accounts, which may constitute the Cash Collateral of Opus, in order to pay its employees, maintain services, operate and preserve their businesses, and meet their administrative responsibilities in these Chapter 11 Cases. The Debtors have no source of

unencumbered cash with which to operate their businesses, and therefore Cash Collateral must be used.

12. As of the filing of this Motion, the Debtors have discussed the use of Cash Collateral with Opus, which does not oppose the Debtors' use of Cash Collateral in accordance with the Budget, subject to negotiating an agreed order regarding same.[3]

13. The Debtors and Opus are parties to the above referenced Opus Loan Agreement which provided the Debtors over $14,340,000. The current balance of the Opus Loan Agreement is approximately $16,010,555.55 under the 2005 Note and $372,090.00 under the 2009 Note, both of which are secured by first and second liens on substantially all of the Debtors' assets.

14. The Debtors propose to use and spend Cash Collateral on an interim basis pending final hearing on the Motion. The Debtors' proposed Cash Collateral Budget is attached hereto as Exhibit B. Further, the Debtors propose to provide adequate protection to Opus in the form of Replacement Liens, a super-priority administrative expense claim, weekly reports detailing the use of Cash Collateral, maintenance of insurance and timely payment of all postpetition taxes and costs in relation to the Collateral in the ordinary course of the Debtors' businesses.

15. The use of Cash Collateral by the Debtors is necessary on an emergency, interim basis in order to avoid an interruption of Debtors' businesses and imminent, irreparable harm to its estate that would result from, *inter alia*, their failure to pay wages and other basic expenses of

---

[3] The Debtors and Opus are continuing to negotiate regarding the terms of the Proposed Interim Cash Collateral Order. While the Proposed Interim Cash Collateral Order reflects the most current status of the negotiations, there may be additional modifications and the Debtors and Opus reserve the right to present a modified order should the need arise.

day-to-day operations. A Budget specifying the emergency expenses and cash requirements of the Debtors is attached as an exhibit to the Proposed Interim Cash Collateral Order.

16. The terms and conditions of the Proposed Interim Cash Collateral Order are fair and reasonable, and reflect the exercise of the Debtors' prudent business judgment consistent with the fiduciary duties of a debtor-in-possession.

## V.
## IMMEDIATE AND IRREPARABLE HARM

17. Bankruptcy Rule 4001(b)(2) generally precludes the Court from conducting a final hearing on a motion for authorization to use Cash Collateral earlier than 15 days after service of the motion, except to the extent necessary to prevent "immediate and irreparable harm." The relief sought here is essential to the Debtors' efforts, without it, they will suffer immediate and irreparable harm to maximizing the value of their estates. Absent the cash to operate, the Debtors cannot carry on even their limited businesses on a going-concern basis, and will likely be forced to begin liquidation proceedings before expiration of the twenty (15) day limit. As recognized by Judge Hale, if liquidation occurs, "No one will benefit from the process," because the value of Debtors' estates and businesses will diminish rapidly. *In re CEI Roofing, Inc.*, 315 B.R. 50, 61 (Bankr. N.D. Tex. 2004). Debtors seek the relief requested in this Motion because, without it, all creditors and parties-in-interest will be harmed by the rapid diminution of going concern value of the Debtors' estates.

19. In light of the foregoing, Debtors submit that the relief requested is essential for the Debtors' reorganization, represents an exercise of the Debtors' sound business judgment, is in the best interests of the Debtors' estates and creditors, and is necessary to prevent immediate and irreparable harm.

# VI.
# NOTICE

20. Bankruptcy Rules 4001 and 9014 generally require that any proceeding to use Cash Collateral be made only upon motion and on notice to any other entity that has an interest in the Cash Collateral sought to be used, as well as notice to any official committee and such other entities as the Court may direct.

21. Notice of this Motion is being given concurrently with the filing thereof to the parties listed on the attached service list which includes the Office of the United States Trustee, Opus, and each of the Debtors' twenty (20) largest unsecured creditors. No official committee or trustee has been appointed in these cases. Accordingly, the Debtors submit that, under the circumstances, no further or other notice is necessary, other than with respect to a final hearing on this matter when docketed by the Court.

**WHEREFORE, PREMISES CONSIDERED,** the Debtors request that the Court enter an order, substantially in the form attached hereto as Exhibit A, (i) authorizing the Debtors to use Cash Collateral in accordance with the Proposed Interim Cash Collateral Order and attached budget; (ii) finding that Opus is adequately protected by the Debtors' offers of adequate protection; (iii) following appropriate notice and final hearing in this matter, authorizing continued use of Cash Collateral on such terms as the Court may impose or to which Opus may consent; and (iv) providing the Debtors with such alternative and further relief to which they may show themselves to be justly and equitably entitled.

Respectfully submitted this 18th day of March, 2010.

   /s/ Michael R. Rochelle
Michael R. Rochelle
State Bar No. 17126700
Chris B. Harper

State Bar No. 09025500
Eric M. Van Horn
State Bar No. 24051465
Rochelle McCullough LLP
325 N. St. Paul, Suite 4500
Dallas, Texas 75201
P: (214) 953-0182
F: (214) 953-0185

PROPOSED ATTORNEYS FOR DEBTORS AND
DEBTORS-IN-POSSESSION

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 18, 2010, a true and correct copy of the Motion has been served *via* regular first class U. S. mail, postage prepaid, facsimile, and/or electronic mail through the Court's electronic notification system to all parties on the attached list.

 /s/ Michael R. Rochelle
Michael R. Rochelle

## CERTIFICATE OF CONFERENCE

The undersigned certifies that Michael R. Farquhar and Gregory M. Zarin, counsel for Sammons Enterprises, Inc. and its subsidiaries including Opus 5949 LLC and Sammons VPC, Inc., were contacted via email and telephone regarding the relief requested in this Motion. As explained in the Motion, an agreement has been reached, but may be revised before a hearing on the Motion as the parties continue to negotiate.

 /s/ Michael R. Rochelle
Michael R. Rochelle