
EOD
03/25/2010

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **NORTH AMERICAN** | § | Case No. 10-20071 |
| **TECHNOLOGIES GROUP, INC**. | § | |
| | § | |
| AND | § | |
| | § | |
| **TIETEK LLC,** | § | Case No. 10-20072 |
| | § | |
| AND | § | |
| | § | |
| **TIETEK TECHNOLOGIES, INC.** | § | Case No. 10-20073 |
| | § | |
| | § | **JOINTLY ADMINISTERED** |
| | § | under 10-20071 |
| | § | |
| Debtors | § | Chapter 11 |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO USE
CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (II) GRANTING ADEQUATE
PROTECTION TO OPUS 5949 LLC PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363;
AND (III) SCHEDULING FINAL HEARING PURSUANT TO
<u>BANRKUPTCY RULE 4001(b)</u>**

On March 18, 2010, North American Technologies Group, Inc. ("NATK"), a Delaware corporation, TieTek Technologies, Inc. ("TTT"), a Texas corporation, and TieTek LLC ("TieTek"), a Delaware limited liability company (collectively the "Debtors") in the above-captioned Chapter 11 cases (the "Chapter 11 Cases") filed their Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to use Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to Opus 5949 LLC; and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) (the "Cash Collateral Motion").

Based upon consideration of the Cash Collateral Motion, the arguments of counsel, the Declaration of Joe B. Dorman in Support of Voluntary Petitions Under Chapter 11 of Title 11 of

1

the United States Code and First Day Motions, the testimony and other evidence proffered or presented at the hearing, and after due deliberation and consideration,

**THE COURT HEREBY PRELIMINARILY FINDS AND CONCLUDES THAT:**

1. The Debtors' Chapter 11 Cases were commenced by the filing of voluntary petitions on March 18, 2010 (the "Petition Date") under Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their business and managing their property as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner. The U.S. Trustee has not appointed any official committees.

2. The Court has jurisdiction over these cases, the Debtors and the Debtors' property under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(M) and (O). The statutory predicates for the relief provided are sections 105, 361 and 363 of the Bankruptcy Code and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Venue of these Chapter 11 Cases and the Cash Collateral Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3. The Debtors and Opus 5949 LLC ("Opus") agree that the Parties, jointly and severally, entered into (i) that certain Promissory Note dated July 7, 2005 (the "2005 Note"); and (ii) that certain Amended and Restated Promissory Note dated August 20, 2009 (the "2009 Note") with Opus to borrow $14,000,000.00 and $340,000.00, respectively (collectively with all loan document and security agreements referenced *infra,* the "Opus Loan Agreement").

4. The Debtors and Opus agree that as of the Petition Date, the total outstanding balance owed to Opus under the Opus Loan Agreement, and amendments thereto, is approximately $16,010.555.55 under the 2005 Note and $372,090.00 under the 2009 Note, for a

total of $16,382,645.55 and that the amounts due under the Opus Loan Agreement, are secured by substantially all of the Debtors' assets pursuant to, *inter alia,* (i) that certain Security Agreement dated February 5, 2004; (ii that certain Security Agreement (Membership Interest) dated February 5, 2004; (iii) that certain Grant of Security Interest in U.S. Patent (Patent No. 5,886,078) dated February 5, 2004; (iv) that certain Grant of Security Interest in U.S. Patent (Patent Application No. 20020123553, now Patent No. 6,828,372) dated February 5, 2004; (v) that certain Grant of Security Interest in U.S. Trademark Registrations and Applications dated February 5, 2004; (vi) that certain Grant of Security Interest in U.S. Patents and Registered Trademark dated on or about July 2007; (vii) that certain Second Lien Security Agreement dated August 20, 2009; (viii) that certain Second Lien Intellectual Property Security Agreement dated on or about August 20, 2009; and (ix) that certain Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing dated September 3, 2009 and recorded in the official records of Harrison County, Texas.

5. The Debtors and Opus agree that Opus has a security interest in substantially all of the Debtors' assets, which extends to protect all cash and cash proceeds that may be deposited into the Debtors' accounts, and such property constitutes cash collateral of Opus within the meaning of 11 U.S.C. § 363 (such property being hereinafter referred to as the "Cash Collateral").

6. Opus is entitled, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Cash Collateral to the extent of the diminution in value thereof, for (i) the use of the Cash Collateral; (ii) the use, sale, lease or other diminution in value of the Cash Collateral; and (iii) the imposition of the automatic stay.

7. Good cause has been shown for entry of this order (I) authorizing the Debtors to use Cash Collateral pursuant to 11 U.S.C. § 363; (II) granting adequate protection to Opus 5949 LLC; and (III) scheduling a final hearing pursuant to Bankruptcy Rule 4001(b) (the "Interim Cash Collateral Order"). The Debtors have no immediately available unencumbered cash or other assets with which to continue to operate their businesses and, thus, require either the consent of Opus or the authorization of this Court to use the Cash Collateral. Opus has consented to the use of their Cash Collateral. The Debtors' use of the Cash Collateral as set forth herein is necessary to avoid immediate and irreparable harm to the Debtors, their businesses and their bankruptcy estates.

8. The Debtors have an immediate need to use Cash Collateral prior to a Final Hearing (defined below) on the Cash Collateral Motion. The terms and conditions of this Interim Cash Collateral Order are fair and reasonable and reflect the exercise of the Debtors' prudent business judgment consistent with the fiduciary duties of a debtors-in-possession.

9. The Debtors have requested immediate entry of this Interim Cash Collateral Order under Bankruptcy Rule 4001(b)(2). Good, adequate and sufficient cause has been shown to justify the granting of the interim relief requested herein, and the immediate entry of the Interim Cash Collateral Order.

10. The findings and conclusions contained in this Interim Cash Collateral Order were made based on the representations of the parties and a limited record. The Court reserves the right at the Final Hearing to modify these findings and conclusions and to make additional findings and conclusions.

Based upon the record made before the Court at the preliminary hearing and the Court's foregoing findings and conclusions, it appears that the Motion has merit, therefore:

**IT IS HEREBY ORDERED** that:

A. The Cash Collateral Motion is granted on an interim basis.

B. The interim hearing on the Cash Collateral Motion was held pursuant to Bankruptcy Rule 4001 to prevent immediate and irreparable harm to the estate, and notice of the Cash Collateral Motion was sufficient and adequate for purposes of Bankruptcy Rule 4001. No further notice of the Cash Collateral Motion or the entry of this Interim Cash Collateral Order is necessary, and this Order shall be binding upon all parties and upon all subsequently appointed Court officers, including any trustee appointed under Chapter 11 or Chapter 7 of the Code.

C. Until the final hearing on April 20, 2010 at 9:30 a.m. (the "Final Hearing"), the Debtors are authorized to use Cash Collateral under the terms of the budget, attached hereto as "Exhibit A" (the "Budget"). This interim authorization will terminate on the earlier of (i) the conclusion of a Final Hearing on the Cash Collateral Motion, (ii) 30 days after the entry of this Interim Cash Collateral Order, or (iii) the occurrence of a Termination Event (as defined below).

D. During the period governed under this Interim Cash Collateral Order, the Debtors must maintain an accounting of all funds and the Debtors shall segregate, remit and deposit all of the Cash Collateral consistent with the Debtors' past and ordinary practices.

E. As adequate protection for, and to the extent of, any diminution in the value of Opus' interest in the Cash Collateral resulting from its use under Section 363(c) of the Bankruptcy Code (the amount of any such diminution being referred to as "Adequate Protection Obligations"), Opus is granted or, where necessary, the Debtors are ordered to provide Opus:

(a) valid and automatically perfected replacement security interests and liens, in and upon all property and assets of the Debtors' estates which are of the same categories and types of property and assets that comprised Opus' prepetition collateral, whether acquired before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all products and proceeds thereof (including, without limitation claims of the Debtors against third parties for loss or damages to such property), including all accessions thereto, substitutions and replacements wherever located (the "Replacement Liens"); provided, however, such Replacement Liens shall be subject to any interest of third-parties for property held in trust by the Debtors pursuant to applicable law or contractual agreement;

(b) to the extent such Replacement Liens are insufficient to adequately protect any diminution in value of Opus' interest in the prepetition collateral and Cash Collateral, a super-priority administrative expense claim to the extent of such diminution, and all the benefits and protections allowable under Bankruptcy Code § 507(b), which claim shall have priority over all costs and expenses of administration of any kind, including those specified or ordered pursuant to Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1114, or any other provision of the Bankruptcy Code or otherwise (whether incurred in this Case or in a subsequent Chapter 7 case), and shall at all times be senior to the rights of the Debtors, any successor trustee or estate representative in these Chapter 11 Cases, or any successor case(s);

(c) weekly reports, during the Forecast Period until a Termination Event, executed by the Debtors' General Counsel, which reconcile actual Cash Collateral usage during the

foregoing week in comparison to the Cash Collateral Budget and certify compliance with the Budget (subject to allowable variances); and

       (d) maintenance of adequate insurance coverage in relation to the Collateral, and, if applicable, to payment of all postpetition taxes assessed and costs due in relation to the Collateral in the ordinary course of the Debtors' business, thereby keeping the properties free of liens.

       G.     The adequate protection provided is reasonable and adequate under the circumstances to protect the interests of Opus. Notwithstanding any other provision hereof, the grant of adequate protection to Opus is without prejudice to any party to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors, or any other party in interest, to contest any such modification.

       H.     Furthermore, any challenge by the Debtor to the validity, perfection, or priority of the security interest and liens of Opus in this case must be commenced by way of adversary proceeding on or before 90 days after the Petition Date (the "Challenge Deadline"). If the Debtor does not commence an adversary proceeding on or before the Challenge Deadline, then (a) the Debtor shall be deemed to have agreed and acknowledged that Opus' liens against and security interests in the Collateral are legal, valid, binding, perfected, and otherwise unavoidable, and (b) Opus' liens shall not be subject to any other or further challenge by the Debtor. Nothing else in this Interim Cash Collateral Order shall prevent any other party in interest, besides the Debtors, from challenging the rights of Opus, its successors, heirs, or assigns.

I. Unless specifically waived in writing by Opus, the Debtors' rights and authority to use Cash Collateral under this Interim Cash Collateral Order will immediately terminate upon the occurrence of any of the following (each, a "Termination Event"):

(i) the end of the Forecast Period (unless extended by separate order in connection with the submission of a supplemental budget for the extension period);

(ii) the Court's entry of an order finding a violation of, or a default event, under the Court's order authorizing use of Cash Collateral;

(iii) the Debtor's actual disbursements exceeding 20% of the disbursements authorized for any line item under the Budget or 110% on an overall cumulative basis;

(iv) the Court's entry of an order authorizing and providing post-petition debtor-in-possession financing for the Debtors;

(v) the Debtor's failure to cure a breach by the Debtors of any other obligation under the Interim Cash Collateral Order within five business days following the delivery of written notice of a breach by the Debtors to counsel for Opus

(vi) the Court's entry of an order appointing a Chapter 11 trustee;

(vii) the Court's entry of an order converting the Bankruptcy Case to a proceeding under Chapter 7 of the Bankruptcy Code; or

(viii) the Court's entry of an order dismissing the Chapter 11 Cases.

J. The provisions of this Interim Cash Collateral Order inures to the benefit of and extends the protections set forth herein to the Debtors and Opus, and is binding upon the Debtors, Opus, and their respective successors and assigns, including any Trustee, agent, administrator, or other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to property of the Debtors' estates, whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case, and is also binding upon all creditors of the Debtors and all other parties in interest, except as expressly set forth herein.

K. If any or all of the provisions of this Interim Cash Collateral Order are hereafter modified, vacated, or stayed, such action will not affect the validity of any obligation, indebtedness or liability incurred by the Debtors to Opus from the Petition Date through the effective date of the modification, vacation or stay, or the validity, enforceability of any security interest, lien or priority authorized or created hereunder.

L. Under Sections 105, 361 and 363 of the Bankruptcy Code, Opus is found to have acted in "good faith" in connection with the negotiation of Interim Cash Collateral Order, and it is entitled to the protection provided under Section 363(m) of the Bankruptcy Code, if such section is applicable.

M. Except under the terms of this Interim Cash Collateral Order, the Debtors shall be prohibited from using the Cash Collateral. Notwithstanding any provision in any other orders entered by this Court authorizing the Debtors to make payments in respect of prepetition obligations, the provisions in this Interim Cash Collateral Order and the Budget conditioning the payment of such amounts or limiting the amount of such payments are controlling as to use of any Cash Collateral.

N. The use of cash Collateral is partially granted on an interim basis and final disposition of the remaining relief sought in the Cash Collateral Motion will be determined at a separate hearing. Any objections to the Motion with respect to the partial relief granted that have not previously been withdrawn are hereby overruled.

O. The Interim Cash Collateral Order will take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, and the Clerk of the Court is directed to enter Interim Cash Collateral Order on the Court's docket in these cases.

P. The failure of any party in interest to raise an objection to the entry of this Interim Cash Collateral Order shall not prejudice such party's right to assert an objection to entry of a final order within the time permitted to do so or assert an administrative claim or seek other relief.

Q. It is also specifically agreed and understood that this Interim Cash Collateral Order is being entered into to authorize temporary usage by the Debtors of Cash Collateral pending a final hearing authorizing usage of Cash Collateral.

R. The Final Hearing on the Debtors' Cash Collateral Motion is set for April 20, 2010 at 9:30 a.m. at 110 North College Avenue, 9th Floor, Tyler, Texas 75702. Debtors' counsel shall serve a separate Notice of Hearing for a Final Hearing on the Cash Collateral Motion on Opus, the U.S. Trustee, the twenty (20) largest unsecured creditors of each of the Debtors, and any party requesting notice, within 48 hours of its entry.* Any objections must be filed and served so that they are received by counsel for the Debtors, Michael R. Rochelle, 325 North St. Paul Street, Suite 4500, Dallas, Texas 75201, not later than three (3) business days before the Final Hearing.

*The Notice shall include the following statement:

**THE FINAL HEAIRNG WILL BE HELD BEFORE THE
HONORABLE BILL PARKER AT
110 NORTH COLLEGE AVENUE, 9TH FLOOR
TYLER, TX 75702**

Signed on 3/25/2010

*Brenda T. Rhoades* SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE