

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **NORTH AMERICAN** | § | Case No. 10-20071 |
| **TECHNOLOGIES GROUP, INC**. | § | |
| | § | |
| AND | § | |
| | § | |
| **TIETEK LLC,** | § | Case No. 10-20072 |
| | § | |
| AND | § | |
| | § | |
| **TIETEK TECHNOLOGIES, INC.** | § | Case No. 10-20073 |
| | § | |
| | § | **JOINTLY ADMINISTERED** |
| | § | under 10-20071 |
| | § | |
| Debtors | § | Chapter 11 |

### ORDER (I) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND (II) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

CAME ON FOR HEARING the *Debtors' Amended Motion for an Order (I) Authorizing Sale of Substantially All of the Debtors' Assets and (II) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* (Docket No.78, the "Motion") filed by North American Technologies Group, Inc. ("NATK"), a Delaware corporation, TieTek Technologies, Inc. ("TTT"), a Texas corporation, and TieTek LLC ("TieTek"), a Delaware limited liability company (collectively, the "Debtors"), debtors and debtors in possession jointly administered under the above-captioned case (collectively, the "Chapter 11 Cases"), seeking entry of an order under 11 U.S.C. §§ 105, 363, and 365, (a) authorizing and approving the Debtors' sale of substantially all of their assets consisting of real and personal property interests and related property, rights, and interests identified more particularly as the Acquired Assets (herein, the

"Assets") in the Asset Purchase Agreement (collectively with all schedules and exhibits, and any amendments or modifications, the "APA") which is attached to this Order as **Exhibit "A,"** to American TieTek, LLC (the "Purchaser"), free and clear of all liens, claims, interests and encumbrances; (b) authorizing and approving the Debtors' assumption and assignment of a certain executory contract or unexpired lease to Purchase in connection therewith, as more particularly identified and listed on Exhibit A to the APA (the "Assigned Agreement"); and (c) establishing the cure amount with respect to the Assigned Agreement (the "Cure Amount") pursuant to section 365(b)(1)(A) of Title 11 of the Unites States Code (the "Bankruptcy Code"). The APA, which includes the schedules and exhibits thereto, is attached hereto as Exhibit A and is incorporated herein for all purposes as if set forth herein verbatim. The term Assets includes the name and the right to use the name TieTek.

A hearing was held before this Court on August 16, 2010 (the "Hearing") to consider the Motion, the proposed sale of the Assets to the Purchaser under the APA, the proposed assumption and assignment of the Assigned Agreement, and the proposed Cure Amount, at which time all parties in interest were afforded an adequate opportunity to be heard, and the Court heard testimony and received evidence in support of the Motion and proposed sale of the Assets, assumption and assignment of the Assigned Agreement, and Cure Amount, as more fully described in the APA.

Based upon consideration of the Motion, the evidence presented and the representations and arguments of counsel at the hearing on the Motion, and after due deliberation and consideration, this Court finds that good cause exists to approve the Motion and proposed sale of the Assets and assumption and assignment of the Assigned Agreement to the Purchase under the terms set forth in the APA.

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**[1]

1. The Debtors' Chapter 11 Cases were commenced by the filing of voluntary petitions on March 18, 2010 (the "Petition Date") under chapter 11 of the Bankruptcy Code. The Debtors are debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner. On or about April 2, 2010, the U.S. Trustee appointed an official unsecured creditors' committee (the "Committee").

2. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested are sections 105, 363, and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. As detailed in the Motion, the Debtors seek authority to sell their Assets and assume and assign certain executory contracts and unexpired leases following the solicitation of qualified bids and an open, no-reserve auction (the "Auction") which was held on August 11, 2010.

5. The Motion was filed on July 19, 2010. Due and sufficient notice of the Motion, this Court's order approving bidding procedures relating to the Auction (the "Bid Procedures Order") [Docket No. 80], and the Hearing, has been provided to all known creditors, all counter-parties to executory contracts and unexpired leases with any of the Debtors, all entities asserting an interest, claim, encumbrance or lien in or against the Debtors' assets, including the Assets to be sold under the APA, all secured creditors, all entities and counsel requesting notice, all

---

1 All capitalized terms not separately defined herein shall have the meanings ascribed to such terms in the Motion, the Sale Procedures Motion, and the exhibits attached to the Sale Procedures Motion.

appropriate state and federal governmental agencies, the Committee and its counsel, the United States Trustee, and all other appropriate parties in interest (collectively, the "Noticed Entities") as set forth in (i) the Certificate of Service attached to the Motion, (ii) the additional Certificates of Service filed in the case at Docket Nos. 85-87, and (iii) the Certificate of Publication filed in the case at Docket No. 97. This Court finds the scope and manner of notice and service is proper, timely, adequate, and sufficient in accordance with sections 105, 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006 and 9014, and in compliance with this Court's Bid Procedures Order. No other or further notice of the Motion or the Hearing need be provided under the circumstances. A reasonable and appropriate opportunity to object to or be heard regarding the relief requested in the Motion and at the Hearing has been afforded to all interested persons and entities including the Noticed Entities.

6. The sale of the Assets is an appropriate and necessary step towards winding up the Debtors' bankruptcy estates (the "Estates").

7. The Debtors' decision to sell the Assets as requested in the Motion to the Purchaser under the terms set forth in the APA is an appropriate exercise of the Debtors' business judgment, and is in the best interest of the Debtors' creditors and Estates. The proposed sale to the Purchaser is also fully supported by the Committee and the Debtors' principal secured creditor, Opus 5949, LLC ("Opus").

**Business Judgment**

8. A debtor may sell property of the estate other than in the ordinary course of business with court approval and after notice and a hearing. 11 U.S.C. § 363(b)(1). As recognized by the Fifth Circuit, a debtor is entitled to use its business judgment in deciding to sell assets outside of the ordinary course of business. *See Institutional Creditors of Continental*

*Air Lines Inc. v. Continental Air Lines Inc. (In re Continental Air Lines Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986)

9. In determining whether a proposed sale satisfies the "business judgment" standard, courts typically consider whether:

a) sound business justification exists for the sale;
b) fair and reasonable consideration is provided;
c) the transaction has been proposed in good faith; and
d) adequate and reasonable notice is provided.

*See e.g., In re Condere*, 228 B.R. 615, 626 (Bankr. S.D. Miss. 1998).

**Sound Business Justification**

10. The Debtors face a difficult market to sell their Assets because, *inter alia*, the Debtors' manufacturing plant is presently and has for several months been closed and not operating. The Debtors sought, without success, new capital infusions for their business. A sale of the assets is therefore the only feasible solution. In pursuit of a sale, the Debtors engaged Fowler Business Group, LLC d/b/a VR Mergers & Acquisitions—St. Louis ("VR Mergers") on December 22, 2009, and employed VR Mergers pursuant to the order entered in these Chapter 11 Cases on March 25, 2010. VR Mergers is a business broker that specializes in purchase and sale of railroad-related assets. VR Mergers solicited the interest of potential buyers.

11. These efforts to find interested buyers of the Assets have revealed that the current market for the Debtors' Assets is limited. The Debtors received executed Confidentiality Agreements from approximately 50 interested parties. The Assets were properly and effectively marketed.

12. As a result of the limited interest in the Debtors' Assets, an auction sale of the Assets was in the best interest of the Debtors, their secured lender, and their creditors.

13. The Auction was held on August 11, 2010, at the Law Offices of Rochelle

McCullough LLP in Dallas, Texas. The following Qualified Bidders participated in the Auction: the Purchaser; Esco Processing and Recycling, LLC; and California Waste Solutions, Inc. The Auction was well attended and the bidding was robust.

14. The final bids received at the Auction were as follows: the Purchaser bid $3,650,000; Esco Processing and Recycling LLC bid $3,600,000; and California Waste Solutions, Inc. bid $3,550,000. After the close of the auction and after consultation with the Oversight Parties, the Debtors' selected the Purchaser as the Successful Bidder, and Esco Processing and Recycling LLC as the Backup Bidder.

15. As a result of the limited interest in the Debtors' Assets, a sale of the Assets to the Purchaser as the Successful Bidder pursuant to the terms of the APA is in the best interest of the Debtors, their secured lender, and their creditors. It is also in the best interest of the Debtors, their secured lender, and their creditors that the Debtors selected Esco Processing and Recycling LLC as the Backup Bidder.

16. The Purchaser's bids at the Auction were proper, submitted in good faith, without any collusion or other impropriety, and at arm's length. All parties bidding at the Auction had at least the same (if not more) access to information and ability to conduct due diligence and bid as the Purchaser. The Auction was fair, proper, and conducted in accordance with this Court's Bid Procedure Order. The Auction resulted in the highest and best bid for the Assets submitted by the Purchaser. The Purchaser is approved as the highest and best bidder for the Assets under the terms set forth in the APA and Successful Bidder under the Bid Procedures Order.

17. The Debtors have full power and authority to execute the APA and all other documents contemplated therein or otherwise necessary to close the sale of the Assets under the APA. The sale of the Assets by the Debtors to the Purchaser has been duly and validly

authorized by all necessary corporate action of the Debtors. The Debtors' entry into the APA will not violate any law, rule, statute, regulation or judicial decree to which the Debtors are subject.

18. The sale of the Assets to the Purchaser under the APA, including without limitation the assumption and assignment of the Assigned Agreement, and payment of the Cure Amount set forth in the APA by the Purchaser, reflects the exercise of the Debtors' sound business judgment. This Court finds that the Debtors have articulated good and sufficient business justification for the sale of the Assets to the Purchaser pursuant to section 363(b) of the Bankruptcy Code, and for the assumption and assignment of the Assigned Agreement to the Purchaser pursuant to section 365 of the Bankruptcy Code.

**Fair and Reasonable Consideration**

19. The purchase price of $3,650,000 and other sale terms contained in the APA executed by the Debtors and the Purchaser provide fair and reasonable compensation for the Estates. The terms and conditions of the APA are fair, reasonable and appropriate under the circumstances. The APA represents the highest and best offer for the Assets, and the Purchase Price stated therein is fair, reasonable, and adequate, and constitutes reasonably equivalent value and fair market value for the Assets under the Bankruptcy Code and applicable nonbankruptcy law.

20. The counterparties to the Assigned Agreement did not file a Cure Objection and are thus forever barred from asserting any additional claims for payment on account of such Assigned Agreement against the Debtors, the Estates, or the Purchaser other than the Cure Amount stated in the APA. The Cure Amount applicable to the Assigned Agreement and as described in the APA is the sole amount necessary to cure all defaults, if any, and to pay all

actual or pecuniary losses that have resulted from the Debtors' defaults under the Assigned Agreement within the meaning of section 365(b)(1)(A) of the Bankruptcy Code. Further, the Purchaser has provided adequate assurance of the Purchaser's future performance under the Assigned Agreement within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. The assumption and assignment of the Assigned Agreement pursuant to the APA is in the best interests of the Debtors, their creditors and Estates.

**Sale Proposed in Good Faith**

21. The sale has been proposed in good faith. The Bid Procedures promoted fair and open opportunity for competitive bidding. The bid submitted by the Purchaser as a result of this process is the best and highest possible return to the Estates.

**Sale Free and Clear of Liens**

22. It is appropriate to sell the Assets free and clear of all liens, claims, interests, and encumbrances[2] (collectively, "Encumbrances") – including the liens, claims and encumbrances of Opus, and the liens, claims, interests and encumbrances if any, asserted by the TDRRT Royalty Trust (the "Royalty Trust") – under section 363 of the Code, with any such Encumbrances attaching to the net sale proceeds of the sale.

23. Section 363(f) of the Code authorizes a debtor to sell property free and clear of any interest in such property of an entity other than the estate if, other than the obligations and liabilities explicitly accepted by a successful bidder:

    a)    applicable nonbankruptcy law permits sale of such property free and clear of such interests;
    b)    such entity consents;
    c)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
    d)    such interest is in bona fide dispute; or

---

[2]    Other than the obligations and liabilities explicitly assumed in the Executed APA.

e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Satisfaction of any one of the five requirements listed above will suffice to permit the sale of the Assets "free and clear" of liens, claims and encumbrances. *In re C-Power Products, Inc.*, 230 B.R. 800 (Bankr. N.D. Tex. 1998) (for a sale of assets free and clear of liens, claims and encumbrances, one of the conditions of 363(f)(1) through (5) must be met).

24. Sections 365(a) and (b) of the Code allow a debtor to assume, subject to the court's approval, executory contracts and unexpired leases. 11 U.S.C. § 365; *In re National Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000).

25. The Code codifies the requirements for assuming an unexpired lease or executory contract of a debtor:

> [i]f there has been a default in an executory contract or unexpired lease of the debtor, the Debtors may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee (A) cures or provides adequate assurance that the Debtors will promptly cure, such default . . . ; (B) compensates, or provides adequate assurance that the Debtors will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

26. Among other reasons, the Debtors may sell the Assets free and clear of all liens, claims, encumbrances, and interests because there is no reason that any holder of such an interest could not be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its lien or other interest. Accordingly, the requirement under section 363(f)(5) of the Code is satisfied, and the Debtors may sell the Assets free and clear of all liens, claims, encumbrances, and interests. The Debtors may also sell free and clear of the liens of taxing authorities and the Debtors' primary secured lender, Opus, based on the consent of those parties under section

363(f)(2) of the Bankruptcy Code. The Debtors are also able to sell the Assets free and clear of the interests asserted by the Royalty Trust in this case because such interests are in "bona fide dispute" under section 363(f)(4) of the Bankruptcy Code.

27. Although section 365(a) of the Code does not provide a standard for determining when a court may authorize a debtor's assumption or rejection of an executory contract or an unexpired lease, the Fifth Circuit has adopted, and subsequently affirmed, the Supreme Court's rule that a court should defer to the Debtors' business judgment when considering a motion to reject an executory contract or unexpired lease. *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (quoting *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 318 U.S. 523, 550 (1943)). *See also Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 525 n. 5 (5th Cir. 2004) (citing *Richmond Leasing Co.*, 762 F.2d at 1309).

28. The Debtors' assumption and assignment of the Assigned Agreement as described in the APA is an exercise of their sound business judgment and central to the Sale. The Assigned Agreement is that certain Equipment Lease Purchase Agreement dated August 29, 2008, between H&E Equipment Services, Inc. as Lessor, and TieTek, LLC, as Lessee, which has been assigned by Lessor to Wells Fargo. The Assigned Agreement is an integral part of maximizing revenue for certain of the Assets because the equipment subject to the Assigned Agreement performs special, critical and necessary support for the manufacturing of the composite ties. In addition, the purchase by the Purchaser will relieve the Estates of their responsibilities under the Assigned Agreement because the Purchaser will be responsible for remedying valid cure, compensation, and reinstatement costs or expenses, if any, as well as providing the necessary adequate assurance for future payment of all obligations under the

Assigned Agreement.

29. The transfer of the Assets and the assignment of the Assigned Agreement to the Purchaser as set forth in this Order and the APA (a) constitutes legal, valid and effective transfers of property of the Debtors' Estates to the Purchaser, and (b) at closing under the APA shall vest the Purchaser with all right, title and interest of the Debtors in and to the Assets free and clear of all liens, claims, interests, and encumbrances to the fullest extent permitted under section 363(f) of the Bankruptcy Code, including the Liens and Claims as defined in the APA. Except as otherwise stated in the APA, the Debtors transfer of the Assets and assignment of the Assigned Agreement to the Purchaser does not and will not cause the Purchaser to be or become liable in any manner for any debts, liabilities, obligations, taxes, transfer fees or taxes, responsibilities, or any past, present or future claims against the Debtors, including the Liens and Claims, whether known or unknown, or existing in whole or in part as of the date of the closing under the APA or thereafter arising against the Debtors. The transactions and agreements set forth in the APA do not result in the Purchaser assuming any liabilities except as otherwise stated in the APA, cause the continuation of the Debtors' business by the Purchaser, cause the consolidation or *de facto* merger between the Debtors and the Purchaser, or cause the Purchaser to be liable in any manner for any successor liability of any kind or character. The Court finds that the Purchaser is not, and shall not be deemed, a successor entity to any of the Debtors.

**The Purchaser is a Good Faith Purchaser**

30. Section 363(m) of the Code states that:

reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to such entity that purchased or leased such property in good faith.

11 U.S.C. § 363(m).

31. Citing Fifth Circuit precedent, courts have stated that conduct which can destroy a party's good faith status under section 363(m) of the Bankruptcy Code "involves fraud, collusion . . ., or attempt to take grossly unfair advantage of the other bidders." *In re Sullivan Central Plaza I. Ltd.*, 106 B.R. 934, 938 (Bankr. N.D. Tex. 1998) (citing *Matter of Bleaufontaine, Inc.*, 634 F.2d 1383, 1388 (5th Cir. 1981)).

32. The Bid Procedures and Auction promoted a fair, open, and competitive bidding process. As a result, the resulting sales are devoid of fraud and collusion. Additionally, the terms and conditions of the Model APA ensured that all sales of the Assets would be on virtually the same terms and conditions, thereby helping make certain that no bidder had a "grossly unfair" advantage over other bidders.

33. Additionally, the APA was vigorously negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith, and as a result of arms' length bargaining positions. The APA sets forth all of the terms of the agreement between the Debtors and the Purchaser.

34. The Purchaser is a good faith purchaser. The Purchaser independently bid for the Assets and negotiated the APA in good faith. Therefore, the Purchaser is a "good faith purchaser" under section 363(m) of the Bankruptcy Code, and is entitled to all the benefits and protections of a good faith purchaser under section 363(m) of the Bankruptcy Code.

35. Further, the Purchaser's bid in connection with the Auction and negotiation for the sale of the Assets under the APA were not "collusive" in any manner whatsoever within the meaning of section 363(n) of the Bankruptcy Code. Neither the Debtors nor the Purchaser has engaged in any other conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code. The Purchase and its representatives have acted properly and in

good faith in all respects relating to the Auction and the APA.

**Bulk Sales Compliance**

36.     Compliance with applicable laws relating to bulk sales and transfers is not necessary or appropriate under the circumstances.

**Waiver of the Fourteen-Day Stay under Rule 6004(h) is Appropriate**

37.     Rule 6004(h) of the Federal Rules of Bankruptcy Procedure provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Similarly, Rule 6006(d) provides that "an order authorizing the Debtors to assign and execute a contract or unexpired lease under section 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the Court orders otherwise." Fed. R. Bank. P. 6006(d).

38.     It is desirable to close the sale as quickly as possible, and a speedy closing is warranted under the circumstances. The Court approves a waiver of the fourteen-day stay under Bankruptcy Rules 6004(h) and 6006(d). Consequently, this Order constitutes a final order within the meaning of 28 U.S.C. § 158(a), and this Order shall be effective and enforceable immediately upon entry.

**Reasonable Notice has been Provided Under the Circumstances**

39.     In accordance with Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure, the Debtors provided reasonable notice of the Sale, the Motion and the Hearing under the circumstances. Specifically, under the Bid Procedures Order, the Debtors served a Sale and Auction Notice (as defined in the Bid Procedures Order) on:

- a) all entities listed on the current master service list;
- b) all known parties that have or may assert a lien on or security interest in some or all of the Assets;
- c) all known counterparties to the Debtors' executory contracts and unexpired

leases; and

d) those parties who previously contacted the Debtors and their professionals and expressed a bona fide interest in purchasing the Assets. The Sale and Auction Notice includes, among other things, the deadline to object to the Sale and the date and time of the Auction and the hearing for final approval of the Sale.

40. The Debtors also caused the following publications to publish notice of the proposed Sale in *The Dallas Morning News* and *The Marshall News Messenger*. The notice by publication provided the time, date and place of the Auction, the deadline to object to the Sale, and the date and time of the Hearing on the Motion for final approval of the Sale. No further notice is required. The Debtors have in all respects satisfied all notice and service obligations set forth in the Bankruptcy Code and the Bankruptcy Rules.

**WHEREFORE, PREMISES CONSIDERED, IT IS THREFORE ORDERED:**

(i) The Motion be and is hereby granted, and the Debtors' sale of the Assets to the Purchaser free and clear of all liens, claims, encumbrances, and interests as set forth in the APA and this Order, and assumption and assignment of the Assigned Agreement to the Purchaser on the terms set forth in the APA, be and is hereby approved under sections 105, 363 and 365 of the Bankruptcy Code;

(ii) In resolution of the objections filed by Harrison County and the Harrison County Appraisal District, Harris County and Dallas County, (the "Texas Ad Valorem Tax Authorities") [Docket Nos. 88 and 90], prior to the distribution of any proceeds to any other creditor, a segregated account shall be established by the Debtors with sufficient funds for the payment of (i) all delinquent ad valorem taxes on any real property being conveyed and on the business personal property of the Debtors, including any applicable penalties and interest (the "Prepetition Tax Claims"), and (ii) estimated taxes for the 2010 tax year on any real property being conveyed and on the business personal property of the

Debtors (the "2010 Tax Claims"). The liens of the Texas Ad Valorem Tax Authorities for the Prepetition Tax Claims and the 2010 Tax Claims shall attach to these segregated proceeds to the same extent and with the same priority as the liens they now hold against the property of the Debtors. These segregated funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Texas Ad Valorem Tax Authorities, nor a cap on the amounts they may be entitled to receive. Furthermore, the claims and liens of the Texas Ad Valorem Tax Authorities shall remain subject to any objections that any party would otherwise be entitled to raise as to the amount of such claims, or priority, validity and/or extent of such liens. These segregated funds may not be distributed apart from agreement between the Texas Ad Valorem Tax Authorities and the Debtors, or by subsequent order of the Court, duly noticed to the Texas Ad Valorem Tax Authorities;

(iii) All objections to the Motion, including the *Conditional Objection of TDRRT Royalty Trust to Debtors' Amended Motion for an Order Approving Sale of Substantially All of the Debtors' Assets* [Docket No. 69], the *Objection of TDRRT Royalty Trust to Approval of Sale of Assets to American TieTek* [Docket No. 99], and the *Objection of Esco Processing & Recycling, Inc. to Approval of Sale of Assets to American TieTek* [Docket No. 104], were withdrawn, either directly or by representation, at the hearing;

(iv) The Debtors are authorized and directed to consummate the sale of the Assets to the Purchaser on the terms and conditions set forth in the APA and this Order, and to take any and all actions, and to execute any and all documents they deem necessary to carry out the sale contemplated in the APA. If and to the extent the Debtors are unable to do so with respect to post-closing filings, the Purchaser is further authorized to sign on behalf

of the Debtors all forms, documents, applications, and assignments to convey the Assets to the Purchaser including but not limited to the Intellectual Property as that term is defined in the APA;

(v) The Debtors are authorized and directed, pursuant to sections 365 (a) and (f) of the Bankruptcy Code, to assume and assign and transfer the Assigned Agreement to the Purchaser notwithstanding any provisions restricting assignability found in the Assigned Agreement. The Cure Amount applicable to the Assigned Agreement and as described in the APA is the sole amount necessary to cure all defaults, if any, and to pay all actual or pecuniary losses that have resulted from the Debtors' defaults under the Assigned Agreement within the meaning of section 365(b)(1)(A) of the Bankruptcy Code. The counterparties to the Assigned Agreement are forever barred from asserting any additional claims for payment on account of such Assigned Agreement against the Debtors, the Estates, or the Purchaser other than the Cure Amount stated in the APA;

(vi) The fourteen (14) day stay contemplated by Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure is eliminated for purposes of this sale;

(vii) The Purchaser is and shall be deemed to be a good faith purchaser of the Assets. The Purchaser is entitled to all of the protections afforded a good faith purchaser under section 363(m) of the Bankruptcy Code;

(viii) Pursuant to Sections 105(a) and 363(b) and 363(f) of the Bankruptcy Code, the Assets are and shall be transferred to the Purchaser upon closing under the APA free and clear of all liens, claims, interests and encumbrances, including without limitation all Liens and Claims as defined in the APA, any liens, claims, interests or encumbrances relating to or arising in connection with the Royalty Trust Agreements, the Indian MOU, and the

Australian License Agreement as such terms are defined in the APA, and any interests including any royalty payment rights or any rights to consent to any sale of any of the Assets asserted by the Royalty Trust. All creditors and other parties in interest holding or asserting any liens, claims, interests or encumbrances of any kind with respect to or in or against any of the Assets, including Liens and Claims as defined in the APA, any liens, claims, interests or encumbrances relating to or arising in connection with the Royalty Trust Agreements, the Indian MOU, and the Australian License Agreement as such terms are defined in the APA, and any interests including any royalty payment rights or any rights to consent to any sale of any of the Assets asserted by the Royalty Trust, are hereby enjoined and forever barred from asserting any such liens, claims, interests or encumbrances against the Purchaser, its successors or assigns, or any of the Assets or the Assigned Agreement;

(ix) Except as otherwise provided in the APA, the Purchaser shall not in any manner whatsoever be liable or responsible, as successor or otherwise, for any claims against or liabilities, debts or obligations of the Debtors, including any liens, claims, interests or encumbrances, any Liens and Claims as defined in the APA, any liens, claims, interests or encumbrances relating to or arising in connection with the Royalty Trust Agreements, the Indian MOU, and the Australian License Agreement as such terms are defined in the APA, and any interests including any royalty payment rights or any rights to consent to any sale of any of the Assets asserted by the Royalty Trust, and any liabilities, debts or obligations relating to the Assets or the Debtors' use or operation of the Assets or its business. Except as provided in the APA, the Debtors' transfer of the Assets and assignment of the Assigned Agreement to the Purchaser shall not cause the Purchaser to

be or become liable in any manner for any debts, liabilities, obligations, taxes, transfer fees or taxes, responsibilities, or any past, present or future claims against the Debtors, including the Liens and Claims, any liens, claims, interests or encumbrances relating to or arising in connection with the Royalty Trust Agreements, the Indian MOU, and the Australian License Agreement as such terms are defined in the APA, and any interests including any royalty payment rights or any rights to consent to any sale of any of the Assets asserted by the Royalty Trust, whether known or unknown, or existing in whole or in part as of the date of the closing under the APA or thereafter arising against the Debtors;

(x) No person or entity, including any federal, state or local governmental agency, shall assert against the Purchaser or its successors or assigns any liability, debt, claim or obligation relating to or arising from the Assets or the Debtors' operation or use of the Assets, or any liabilities calculable by reference to the Debtor or its business, assets or operations, and all persons and entities are enjoined and forever barred from asserting against the Purchaser or any of the Assets any such liability, debt, claim or obligation, or any liens, claims, interests or encumbrances, including Liens and Claims as defined in the APA, any liens, claims, interests or encumbrances relating to or arising in connection with the Royalty Trust Agreements, the Indian MOU, and the Australian License Agreement as such terms are defined in the APA, and any interests including any royalty payment rights or any rights to consent to any sale of any of the Assets asserted by the Royalty Trust;

(xi) The Cure Amount set forth in the APA relating to the assumption and assignment of the Assigned Agreement is hereby approved as the amount sufficient to cure all actual and

pecuniary defaults, if any, under the Assigned Agreement as required under section 365(b)(1) of the Bankruptcy Code. Upon closing under the APA, the Assigned Agreement shall be valid, binding and in full force and effect and enforceable by the Purchaser in accordance with its terms;

(xii) As to the Assets and the APA, this Order is and shall be (a) effective as a determination that on the closing date all liens, claims, interests and encumbrances, including Liens and Claims as defined in the APA, any liens, claims, interests or encumbrances relating to or arising in connection with the Royalty Trust Agreements, the Indian MOU, and the Australian License Agreement as such terms are defined in the APA, and any interests including any royalty payment rights or any rights to consent to any sale of any of the Assets asserted by the Royalty Trust, have been unconditionally released, discharged, extinguished and terminated for all purposes, and that the conveyances contemplated in the APA and this Order have been effected; and (b) binding upon and govern the acts of all persons and entities, including without limitation any real property or patent filing agents, offices or departments, or any other persons or entities who may be required by operation of law or the duties of their office to accept, file, register, record or release any documents or instruments affecting any of the Assets;

(xiii) The Purchaser and the Debtors are authorized to file this Order of record in any county state or federal records. Each and every federal, state and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA;

(xiv) All entities that are presently or on the closing date in possession of any of the Assets are hereby directed to surrender possession of the Assets to the Purchaser on the closing date;

(xv) The Court retains jurisdiction to interpret, enforce and implement the terms and provisions of the APA and this Order, and to resolve any disputes arising in connection therewith between the Purchaser and the Debtors or any third party; and

(xvi) The terms and provisions of the APA and this Order shall be binding on and inure to the benefit of the Debtors and the Purchasers and their respective successors and assigns, and shall be binding on all creditors and parties in interest in these cases, including the Noticed Parties, and all persons or entities asserting any liens, claims, interests or encumbrances as to any of the Assets.

Signed on 08/16/2010

_____
THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE